UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
PAMELA E. HENDERSON,              )
                                  )
        Plaintiff,                )
                                  )
    v.                            )
                                  )    Civil Action No. 02-1498 (GK)
NORMAN Y. MINETA, Secretary,      )
DEPARTMENT OF TRANSPORTATION,     )
                                  )
        Defendant.                )
_____)

### MEMORANDUM OPINION

Plaintiff, Pamela E. Henderson, brings this suit alleging employment discrimination, hostile work environment and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e, et seq. ("Title VII") against Norman Y. Mineta, Secretary of the Department of Transportation ("DOT").[1]  This matter is before the Court on Defendant's Motion for Summary Judgment.  Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendant's Motion is **denied.**

### I. BACKGROUND

Plaintiff is an African-American female who was employed as a Secretary by the DOT, Federal Aviation Administration ("FAA"), from 1988 until June 12, 2002.

---

[1] Plaintiff also named five DOT employees as Defendants in their individual capacity.  On August 7, 2003, the Court dismissed Plaintiff's claims against these Defendants.  See Henderson v. Mineta, 02cv1498 (GK), August 7, 2003, Mem. Op. at 15, n.4 (citing Gary v. Long, 59 F.3d 1391, 1398 (D.C. Cir. 1995) (holding that, under Title VII, a supervisory employee cannot be held liable in his individual capacity)).

From 1988 until 1995, Abe Tenenbaum[2] acted as Plaintiff's supervisor.  See Pl.'s Statement of Material Facts, ¶ 4.  While under his supervision, Plaintiff received one non-monetary award, two monetary awards and two promotions.  See id. ¶ 5.  According to Plaintiff, she and Tenenbaum "never had any out-of-the-ordinary issues."  Id.

In 1995, Plaintiff was placed under William Hohe's supervision.  See id. ¶ 7.  While under his supervision, Plaintiff received two monetary awards.  See id. ¶¶ 8, 10.  Hohe gave Plaintiff "outstanding" and "above satisfactory" ratings in all categories on her 1996, 1997 and 1998 Knowledge, Skills and Abilities Evaluations.  See Pl.'s Ex. 20.  According to Plaintiff, she and Hohe did not have any issues beyond those that "normally arise between a subordinate and a supervisor."  Pl.'s Statement of Material Facts, ¶ 12.

In late 1998, Plaintiff applied for a contract specialist position but was not selected.  See id. ¶ 13.  On May 28, 1999, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint against Hohe and Deborah Wilson, Plaintiff's third level supervisor, alleging that her non-selection for the position was discriminatory (Plaintiff's "first EEO complaint").  See Def.'s Statement of Material Facts, ¶ 2.

---

[2] While the correct spelling of "Tenenbaum" is unclear from the record, the Court will use this spelling because Plaintiff testified to this spelling in her Deposition.

According to Defendant, "Plaintiff had a history of difficulty with previous supervisors and her chain of command prior to her EEO activity in 1999." Id. ¶ 6.

According to Plaintiff, "things began to change dramatically" following her May 1999 EEO complaint as Hohe "began to nitpick, find fault and criticize just about everything Plaintiff did." Pl.'s Statement of Material Facts, ¶ 15. Plaintiff maintains that Hohe's behavior "stressed [her] out" and she requested to be assigned to a different supervisor. Id.

On October 30, 2000, Plaintiff was reassigned to supervisor James Blades. See id. ¶ 17. Plaintiff claims that "[she] did her best to work with Blades" but he "picked up where Hohe left off and refused to give [her] a chance to build a good relationship with him." Id. According to Plaintiff, Blades treated her with "such hostility and threatened her" that she was forced to obtain a restraining order against him from the District of Columbia Superior Court within the first month of his supervision of her. Id.

On February 15, 2001, Plaintiff filed an EEO complaint against Hohe and Blades, alleging that they subjected her to a hostile work environment in retaliation for filing her first EEO complaint (Plaintiff's "second EEO complaint"). See Def.'s Statement of Material Facts, ¶ 2. Plaintiff maintains that Blades' hostility toward her "increased in intensity, frequency and severity" after

she filed her second EEO complaint.[3]  Pl.'s Statement of Material Facts, ¶ 22.

Defendant maintains that "Plaintiff's work performance and conduct were an issue for [Blades] from the start and caused a strain in their relationship," Def.'s Statement of Material Facts, ¶ 7, and that Blades "had no knowledge of [Plaintiff's] EEO activity when he became her supervisor and only learned of her previous EEO activity after [she] established their poor working relationship and after [she] filed a restraining order against him in November 2000." Id. ¶ 8.

---

[3] According to Plaintiff, the following actions were taken by Blades from November 2000 to June 2002 in retaliation for her EEO activities: "[i]n November of 2000, Blades physically threatened Plaintiff and also threatened to AWOL [absence without leave] Plaintiff; [i]n December of 2000, Blades directed Plaintiff not elevate [sic] matters to any level higher than him [sic]; [i]n January of 2001 Blades issues [sic] a memorandum of counseling against Plaintiff; [i]n February of 2001, Blades directed [Plaintiff] to attend a 'disciplining session' with him . . . [and] Blades approached [Plaintiff's] desk and threw a work assignment at her; [o]n April 20, 2001, Blades issued a letter of Warning and Requirement against Plaintiff[; t]hat same day, [Brian] Isham, Blades [sic] immediate supervisor, issued A Letter of Caution against Plaintiff; [o]n May 4, 2001, Blades issued a Letter of Reprimand to Plaintiff; [i]n June, July and August of 2001, Blades placed Plaintiff on AWOL; [i]n October of 2001, Blades issued a Memorandum of Counseling against Plaintiff . . . [and] issued a Notice of Leave Restriction against Plaintiff; [i]n November of 2001, Blades suspended Plaintiff for five days, without pay; [i]n December of 2001, January, February and March of 2002, Blades placed Plaintiff on AWOL; [i]n April of 2002, Blades issued a Notice of Proposed Removal against Plaintiff; [i]n May 2002, Blades placed Plaintiff on Administrative Leave." Pl.'s Statement of Material Facts, ¶ 23.

Plaintiff claims that she "wrote at least seven (7) letters from November 2000 to August 2001 soliciting Management's intervention but was ignored." Pl.'s Statement of Material Facts, ¶ 24. Plaintiff also claims that her second level supervisor, Brian Isham, who is good friends with Blades, "did not call Plaintiff on any one of those twenty-eight alleged misconduct [sic] to address or hear her version." Id. ¶ 25.

On June 12, 2002, Blades terminated Plaintiff from her position as Secretary. According to Defendant, Plaintiff's removal was "not the product of retaliation, but [wa]s the result of [her] conduct under [Blades]." Def.'s Mot. at 1. Specifically, Defendant claims that Plaintiff was removed for disciplinary reasons, including "(1) failure to follow instructions [14 specifications, third offense since November 4, 2001]; (2) disrespectful behavior toward her supervisor [seven specifications; third offense since November 4, 2001]; (3) absence without leave [five specifications; second offense since November 4, 2001]; and (4) inconsiderate and disruptive behavior [two specifications; first offense]." Def.'s Statement of Material Facts, ¶ 3.

On July 30, 2002, Plaintiff filed the instant action alleging employment discrimination, hostile work environment and retaliation in violation of Title VII. Plaintiff seeks compensatory damages.

On August 7, 2003, the Court granted Defendants' motion to dismiss on the nonselection and hostile work environment claims, and granted in part and denied in part Defendants' motion for summary judgment on the Merit Systems Protection Board's decision sustaining Plaintiff's termination and the retaliatory removal claim.  See Henderson v. Mineta, 02cv1498 (GK), August 7, 2003, Mem. Op..  First, the Court dismissed Plaintiff's non-selection claim as untimely.  See id. at 5.  Second, it concluded that Plaintiff failed to establish that she was subjected to a severe or pervasive hostile work environment.  See id. at 8.  Third, it held that the Merit Systems Protection Board's decision sustaining Plaintiff's termination "is not arbitrary or capricious, and is supported by substantial evidence in the record."  Id. at 9.  Fourth, it concluded that Defendants are not entitled to summary judgment on the retaliatory termination issue.  See id. at 15.

On January 28, 2005, Defendant filed the instant Motion for Summary Judgment. Defendant claims that Plaintiff cannot establish a prima facie case of retaliation because she "cannot establish a causal connection between her EEO activities and her termination." Def.'s Mot. at 7.  Defendant also asserts that, "[a]ssuming arguendo that plaintiff establishes a prima facie case of retaliation, defendant has met the burden of articulating a legitimate non-retaliatory reason for its action," id. at 12, and that "Plaintiff has not and cannot produce evidence that the

agency's legitimate, non-retaliatory reason for her removal is pretext for retaliation." Id. at 13.

## II. STANDARD OF REVIEW

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In determining whether the moving party has met this burden, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). See Washington Post Co. v. United States Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989). Once the moving party makes its initial showing, however, the nonmoving party's opposition must consist of more than mere unsupported allegations or denials and must demonstrate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. See McKinney v. Dole, 765 F.2d 1129, 1135

-7-

(D.C. Cir. 1985). Accordingly, at that point, the non-moving party is "required to provide evidence that would permit a reasonable [fact-finder] to find" in its favor.  Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

### III.  ANALYSIS

Plaintiff claims that she was terminated on June 12, 2002 in retaliation for engaging in protected EEO activity.

In evaluating this claim, the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies.  See Lathram v. Snow, 336 F.3d 1085, 1089 (D.C. Cir. 2003); Morgan v. Fed. Home Loan Mortgage Corp., 328 F.3d 647, 651 (D.C. Cir. 2003).

Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of retaliation. See McDonnell Douglas, 411 U.S. at 802.  "The burden of doing so is "'not onerous.'"  Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149 (D.C. Cir. 2004) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  To establish a prima facie case of retaliation, the plaintiff must show that (1) she engaged in a statutorily protected activity; (2) her employer took an adverse personnel action; and (3) a causal connection existed between the two.  See Jones v. Washington Metro. Area Transit Auth., 205 F.3d 428, 433 (D.C. Cir. 2000); Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985).  In order to establish a prima

facie case of retaliation, the plaintiff "merely needs to establish facts adequate to permit an inference of retaliatory motive." Id.

If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to "produce admissible evidence that, if believed, would establish that the employer's action was motivated by a legitimate, nondiscriminatory reason." Teneyck, 365 F.3d at 1151 (internal citation omitted). See McDonnell Douglas, 411 U.S. at 802; Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998). "The employer's burden is one of production, not persuasion." Teneyck, 365 F.3d at 1151 (internal citation omitted).

If the employer satisfies this burden, "'the McDonnell Douglas framework -- with its presumptions and burdens -- disappear[s], and the sole remaining issue [i]s discrimination vel non.'" Teneyck, 365 F.3d at 1151 (quoting Reeves, 530 U.S. at 142-43) (internal quotations and citations omitted). At this point, "a court reviewing summary judgment looks to whether a reasonable jury could infer intentional discrimination ... from all the evidence, including '(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer).'" Carter v. George Washington Univ.,

387 F.3d 872, 878 (D.C. Cir. 2004) (quoting Waterhouse v. Dist. of Columbia, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (internal quotations omitted)).

Defendant argues that summary judgment on Plaintiff's claim is appropriate because Plaintiff has failed to establish a prima facie case of retaliation. Defendant focuses its argument on the third element of the prima facie case -- causation -- and the temporal proximity between Plaintiff's protected EEO activity and her subsequent termination.[4] Specifically, Defendant maintains that Blades "had no knowledge of [Plaintiff's] EEO activity when he became her supervisor and only learned of her previous EEO activity after [she] established their poor working relationship and after [she] filed a restraining order against him in November 2000." Def.'s Statement of Material Facts, ¶ 8. Defendant also argues that "plaintiff's removal occurred too distant in time from plaintiff's protected activities to permit an inference of retaliatory intent for any of her EEO formal or informal complaints." Def.'s Mot. at 7. In addition, Defendant asserts that "[a]ssuming arguendo that plaintiff establishes a prima facie case of retaliation, defendant has met the burden of articulating a legitimate non-retaliatory reason for its action," id. at 12, and that "Plaintiff has not and cannot produce evidence that the

---

[4] Defendant concedes that Plaintiff has established the first two elements of the prima facie case.

agency's legitimate, non-retaliatory reason for her removal is pretext for retaliation." Id. at 13.

Despite these arguments, the Court concludes that there is sufficient evidence from which a jury could reasonably infer a retaliatory motive. In May 1999, Plaintiff filed her first EEO complaint. In February 2001, she filed her second EEO complaint. Plaintiff is alleged to have committed 28 acts of misconduct, all under her new supervisor, between November 2001 and March 2002. In June 2002, three months later, Plaintiff was terminated.

Defendant claims that it was Plaintiff's "poor working relationship and misconduct under her new supervisor," id. at 7, not her protected EEO activity, that precipitated her firing. It is undisputed, however, that before Plaintiff filed her two EEO complaints, she was never formally disciplined, received four monetary awards, two promotions, and was favorably evaluated by her supervisors. These facts squarely rebut Defendant's claim that Plaintiff failed to demonstrate a prima facie case of retaliation. See Buggs v. Powell, 293 F.Supp.2d 135, 149 (D.D.C. 2003) ("'Evidence of discriminatory or disparate treatment in the time period between the protected activity and the adverse employment action can be sufficient to show a causal connection.'") (quoting Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003) (internal citations omitted)); Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997) (same); Sumner v. United

States Postal Serv., 899 F.2d 203, 209 (2d Cir.1990) (same).  These facts also provide grounds upon which a reasonable jury could conclude that Defendant's explanation for Plaintiff's release was a pretext for discrimination.

Accordingly, Defendant is not entitled to summary judgment on Plaintiff's claim of retaliation.

**IV.  CONCLUSION**

Accordingly, for the foregoing reasons, Defendant's Motion for Summary Judgment is **denied**.

An Order will issue with this Memorandum Opinion.


July 14, 2005                          /s/
                                       Gladys Kessler
                                       U.S. District Judge